# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-1450V

Filed: March 25, 2025

Reissued for Public Availability: May 2, 2025

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                                 *
                                                 *
VAHAN ELOYAN,                                    *
                                                 *
                                                 *
                    Petitioner,                  *
                                                 *
                                                 *
v.                                               *
                                                 *
                                                 *
SECRETARY OF HEALTH AND                          *
HUMAN SERVICES,                                  *
                                                 *
                                                 *
                    Respondent.                  *
                                                 *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*Vahan Eloyan*, Elkins Park, PA, *pro se*.
*Michael Lang*, U.S. Department of Justice, Washington, DC, for Respondent.

### ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT[1]

**Shah**, Special Master:

      On September 21, 2018, Vahan Eloyan ("Petitioner" or "Mr. Eloyan") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10,

---

[1] Because this Order contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Order will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

Pursuant to Vaccine Rule 18(b), this Order was initially filed on March 25, 2025, and the parties were afforded 14 days to propose redactions. The parties did not propose any redactions. Accordingly, this Order is reissued in its original form for posting on the court's website.

*et seq.*[2] (the "Vaccine Act" or "Program"). The petition alleges that Mr. Eloyan developed transverse myelitis ("TM") caused by the influenza ("flu") and tetanus, diphtheria, and acellular pertussis ("Tdap") vaccines he received on December 14, 2015. Pet. at 1, ECF No. 1.

On November 17, 2023, former Special Master Katherine E. Oler issued a decision dismissing the petition, finding that Petitioner had not preponderantly established that he suffered from TM, and instead finding he more likely suffered from cervical spondylotic myelopathy ("CSM"). *See Eloyan v. Sec'y of Health & Hum. Servs.*, No. 18-1450V, 2023 WL 9053983 (Fed. Cl. Spec. Mstr. Nov. 17, 2023) ("Dismissal Decision").[3] A motion for review was not filed.

Presently pending before me is Petitioner's July 30, 2024 "Motion for Relief from Judgment pursuant to RCFC Appendix B Rule 36 and RCFC Rule 60" ("Motion"). ECF No. 97. For the reasons discussed below, I deny the Motion.

### I.   PROCEDURAL HISTORY

Mr. Eloyan, initially represented by Ms. Elizabeth Muldowney, alleged that he developed TM caused by flu and Tdap vaccinations he received on December 14, 2015. Pet. at 1. On January 17, 2020, Respondent filed a Rule 4(c) Report ("Report") disputing that Petitioner developed TM and recommending that the case be dismissed. Report at 17-18, 20, ECF No. 26. Petitioner submitted two expert reports from neurologist Salvatore Napoli, M.D. Exs. 29, 51. Respondent countered with expert reports from neurologist Brian Callaghan, M.D., M.S. (Ex. A), immunologist Ross Kedl, Ph.D. (Ex. C), and neuroradiologist William Zucconi, D.O. (Ex. E).

On November 10, 2021, Special Master Oler held a Rule 5 conference at which she informed the parties that she found Respondent's experts to be persuasive in opining that Petitioner probably did not have TM and more likely had CSM. *See* Rule 5 Order, ECF No. 52. Special Master Oler detailed the reasons for her tentative conclusion and recommended that Petitioner dismiss his claim. *Id.* at 1-2.

On December 27, 2021, Petitioner filed a status report requesting an entitlement hearing. ECF No. 53. A hearing was scheduled, and the parties filed pre-hearing briefs. ECF Nos. 60, 63, 69. The hearing took place on November 15, 2023. *See generally* Transcript, ECF No. 78. Drs. Napoli, Callaghan, Zucconi, and Kedl testified. Petitioner was present at the hearing, but neither he nor any of his family members testified. At the conclusion of the hearing, Special Master Oler issued a ruling from the bench, concluding that the evidence demonstrated that Petitioner more likely than not had a diagnosis of CSM, and the record did not support a diagnosis of TM. Tr. at 174-75. Special Master Oler memorialized her conclusions in the Dismissal Decision issued November 17, 2023, explaining that Petitioner failed to prove his condition met several of the medical criteria required for a TM diagnosis. Dismissal Decision at 8. Specifically, he failed to

---

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] Citations to the Dismissal Decision will be to the slip opinion.

2

exclude a compressive etiology for his symptoms. *Id.* at 9-11. He also failed to show his condition reached its nadir between four hours and twenty-one days after its onset. *Id.* at 11-12. Further, he did not demonstrate that the presence of three oligoclonal bands in his cerebrospinal fluid was diagnostic of TM. *Id.* at 12.

Petitioner did not file a motion for review of the Dismissal Decision. On December 21, 2023, a judgment was issued dismissing the petition. ECF No. 79. The same day, Petitioner filed an "Election to File Civil Action." ECF No. 80. On July 8, 2024, Special Master Oler partially granted Petitioner's motion for attorneys' fees and costs ("Fee Decision"), finding that Petitioner had produced "sufficient evidence to satisfy the reasonable basis standard." Fee Decision at 4, ECF No. 87.

On July 9, 2024, Ms. Muldowney filed a motion to withdraw as Mr. Eloyan's counsel, stating that he had requested the withdrawal. ECF No. 89. The motion was granted the same day. ECF No. 90.

On July 30, 2024, Mr. Eloyan, proceeding *pro se*, submitted a document entitled "Request for post-decision [relief]; reconsideration." On August 29, 2024, this case was reassigned to me. ECF No. 95. On September 9, 2024, I directed the Clerk's Office to file Petitioner's request under the title "Motion for Relief from Judgment pursuant to Vaccine Rule 36 and CFC Rule 60."[4] ECF No. 96, 97 ("Motion"). Respondent filed a response on September 23, 2024 ("Response"). ECF No. 98. Petitioner filed a reply on September 30, 2024 ("Reply"). ECF No. 99.

## II. THE PARTIES' ARGUMENTS

Petitioner's Motion raises several objections to how his case was prosecuted and decided. His first objection is that his former attorney, Ms. Muldowney, inadequately represented him in his case. Motion at 3-4. He claims that Ms. Muldowney spoke with his mother, who served as his point of contact,[5] for less than an hour cumulatively during her representation of him and never met with him in person. *Id.* at 4. As a result, although she had access to all of Petitioner's medical records, Ms. Muldowney purportedly did not know important facts regarding his health, which left his expert, Dr. Napoli, unable to "defend his opinion." *Id.* at 3-4. Petitioner argues that he became aware during the entitlement hearing that Ms. Muldowney and Dr. Napoli actually knew "little about [his] condition." *Id.* at 4. For example, he points out that Dr. Napoli repeatedly characterized him as "paraplegic" when he is actually quadriplegic. *Id.* He also reports that Ms. Muldowney advised against him or his parents testifying at the entitlement hearing; such testimony, he generally argues, could have changed the case's outcome. *Id.* at 5.

---

[4] Although Petitioner's Motion was entitled "Request for Post-Decision [Relief]; Reconsideration," I instructed the Clerk's Office to file Petitioner's request under Vaccine Rule 36 and RCFC 60 because it was the only time-appropriate possible basis for relief. Under Vaccine Rule 23, a motion for review must be filed within 30 days of the date the decision was filed; here, by December 18, 2023. Under Vaccine Rule 31, a motion for reconsideration must be filed within 30 days from entry of judgment; here, by January 23, 2024.

[5] Petitioner states that his mother served as his point of contact with Ms. Muldowney because his cerebral palsy made it difficult for him to talk on the telephone. Motion at 4.

Petitioner further asserts that there were "misinterpretation[s] of facts by various experts and holes in expert opinions that should have been addressed/rebutted" by his counsel. Motion at 5. He notes that Respondent's expert, Dr. Zucconi, stated that Petitioner had a history of diabetes and substance abuse. *Id.* at 6. Petitioner disputes this characterization of his medical history. *Id.* He also argues that his pre-vaccination records were improperly interpreted by Respondent's experts to opine that he had symptoms such as severe neck pain, balance problems, and hand weakness before being vaccinated. *Id.* at 6-10. He claims that a correct view of the records demonstrates that he developed symptoms consistent with TM only after vaccination. *Id.* at 7. He also challenges the accuracy of medical records that report that his TM was "self-diagnosed," noting that he was diagnosed with TM at Los Robles Hospital, which he believed was confirmed by providers at UCLA Medical Center. *Id.* at 11.

Second, Petitioner contests Special Master Oler's conclusion that he failed to satisfy two of the diagnostic criteria for TM. Motion at 11-12. He disputes that he failed to rule out a compressive etiology for his condition, noting that some of his treating physicians suspected an inflammatory condition instead of a mechanical one. *Id.* at 12. He also argues that the exclusion of a compressive etiology was supported by the fact that he did not materially improve after having cord decompression surgery. *Id.* at 13-15. He contends that the issue of whether he reached the nadir of his symptoms within twenty-one days was "not as important" as the first three diagnostic criteria for TM. *Id.* at 16.

Respondent argues that Petitioner has failed to identify any extraordinary circumstance that would warrant relief from the judgment in this case. Response at 1. Respondent notes that Petitioner did not expressly invoke Rule 60(b) of the Rules of United States Court of Federal Claims, so "his motion is likely understood to arise from Rule 60(b)(6), a 'catchall provision.'"[6] Response at 3. Respondent contends it is legally insufficient to assert that Ms. Muldowney was negligent in her presentation of his case. *Id.* at 3-4. Rather, a petitioner is bound by his attorney's decisions absent exceptional circumstances such as abandonment or deception. *Id.* at 4. Furthermore, even if Petitioner had demonstrated his attorney abandoned him, his failure to file a motion for review of the Dismissal Decision warrants denial of a motion for relief from the judgment at this stage. *Id.*

In the Reply, Petitioner specifically argues he is entitled to relief from the judgment under RCFC 60(b)(1) and 60(b)(6). Reply at 1. He contends that he lost the opportunity to seek review of the Dismissal Decision because he was not informed by Ms. Muldowney of the deadline until it had already passed. *Id.* at 1-2. He reiterates his claims that Ms. Muldowney did not fully understand his medical condition, failed to correct errors in the expert reports and medical records, failed to meet with him and his family in person, and advised against him and his parents testifying. *Id.* at 2. He argues that, as a result, he did not have a full and fair opportunity to present his case. *Id.* at 3.

---

[6] Respondent centers his argument on the asserted lack of "extraordinary circumstances" under RCFC 60(b)(6), but he concludes by arguing that "Petitioner has not established that he qualified for the relief afforded by Rule 60(b) under any of the provisions." Response at 7.

4

### III.  **APPLICABLE LAW**

Rule 36 of the Vaccine Rules of the United States Court of Federal Claims permits a party to seek relief from a judgment or order pursuant to RCFC 60.  Vaccine Rule 36(a).  RCFC 60 is identical to Rule 60 of the Federal Rules of Civil Procedure, and the same standards apply for evaluating both rules. *Dobyns v. United States*, 915 F.3d 733, 737 n.1 (Fed. Cir. 2019) (citing *Info. Sys. & Networks Corp. v. United States*, 994 F.2d 792, 794-97 & n.3 (Fed. Cir. 1993)); *Blake v. Sec'y of Health & Hum. Servs.*, No. 03-31V, 2014 WL 7331948, *4 (Fed. Cl. Spec. Mstr. Sept. 11, 2014).  "The court has discretion regarding whether to grant relief under [RCFC] 60(b), 'and the court may weigh equitable considerations in the exercise of its discretion.'" *Curtis v. United States*, 61 Fed. Cl. 511, 512 (2004) (quoting *Dynacs Eng'g Co. v. United States*, 48 Fed. Cl. 240, 241-42 (2000)); *see also DiMasi v. Sec'y of Health & Hum. Servs.*, No. 2022-1854, 2023 WL 4697122, at *7 (Fed. Cir. July 24, 2023).  RCFC 60(b) is a remedial provision that should be liberally construed in the interest of effecting substantial justice. *Patton v. Sec'y of Health & Hum. Servs.*, 25 F.3d 1021, 1030 (Fed. Cir. 1994) (citations omitted).

Under RCFC 60(b), the court may grant relief from a final judgment on any of the following grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b);
> (3) fraud . . . , misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

RCFC 60(b).  The burden is on the moving party to demonstrate entitlement to relief under RCFC 60(b).  *Kennedy v. Sec'y of Health & Hum. Servs.*, 99 Fed. Cl. 535, 550 (2011).  This type of motion is "not a pleading, like a complaint, in which the factual allegations] are presumed true." *Id.* (citing RCFC 7(b); *Girard Trust Bank v. Martin*, 557 F.2d 386, 389 (3d. Cir.), *cert. denied*, 434 U.S. 985 (1997)).  "Nor does it constitute a mere invitation for the court to investigate further whether to grant relief." *Id.*

RCFC 60(c) requires that any motion pursuant to RCFC 60(b) be made "within a reasonable time" and more specifically, for subsections (1) through (3), "no more than a year after the entry of the judgment." Subsection (6), which is not subject to this one-year limitation, is the broadest grant of authority to provide relief in order to achieve justice; however, it "may be successfully invoked 'only when Rules 60(b)(1) through (b)(5) are inapplicable.'" *DiMasi*, 2023 WL 4697122, at *8 (quoting *Kemp v. United States*, 596 U.S. 528, 533 (2022)); *see also JGB Enterprises, Inc. v. United States*, 71 Fed. Cl. 468, 472-73 (2006) (explaining that "plaintiff's allegations cannot support the simultaneous pursuit of relief under RCFC 60(b)(1) and (b)(6) because the provisions are mutually exclusive and because plaintiff's entire amended motion is properly construed as seeking relief for 'excusable neglect' ").

### A. RCFC 60(b)(1)

RCFC 60(b)(1) permits a court to grant a party relief from final judgment due to "mistake, inadvertence, surprise or excusable neglect." RCFC 60(b)(1). A court evaluating a motion under this provision must determine whether a *prima facie* case for relief has been made, examining "(1) whether the movant has a meritorious claim or defense; (2) whether the nonmovant would be prejudiced by the granting of relief; and (3) whether the matter sought to be relieved was caused by the movant's own culpable conduct." *Orient Overseas Container Line (UK) Ltd. v. United States*, 52 Fed. Cl. 805, 807 (2002) (citing *Stelco Holding Co. v. United States*, 44 Fed. Cl. 703, 708-09 (1999); *Info. Sys.*, 994 F.2d at 795–96). The court should balance these factors; none are dispositive on their own. *Info. Sys.*, 994 F.2d at 796.

A "meritorious" claim under RCFC 60(b)(1) is one that is legally tenable. *See Curtis*, 61 Fed. Cl. at 512-13; *Stelco*, 44 Fed. Cl. at 709; *Rodriguez v. Sec'y of Health & Hum. Servs.*, No. 14-722V, 2019 WL 4054016, *4 (Fed. Cl. Spec. Mstr. July 29, 2019). This showing is required to ensure that "vacating the judgment will not be an empty exercise." *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir. 1992). A claim is legally tenable if it "alleges a set of operative facts, which, if proven at trial, would establish . . . entitlement." *Stelco*, 44 Fed. Cl. at 709. In assessing the question of "culpable conduct," the court should decide whether the error was caused by the movant's willful conduct. *Info. Sys.*, 994 F.2d at 796. "Culpable conduct" does not include mere inadvertent or negligent failure to follow court rules or procedures. *Id.* A petitioner will generally be held accountable for the acts and omissions of his or her legal counsel. *Stelco*, 44 Fed. Cl. at 715.

If a *prima facie* case for relief exists, the court must decide whether a mistake, inadvertence, surprise, or excusable neglect warrants relief. The Federal Circuit has held that a "mistake" under RCFC 60(b)(1) is a "factual misconception or misunderstanding" or an "error of law or fact" made by a party or the court. *DiMasi*, 2022 WL 20272146, at *3 (citing *Kemp*, 596 U.S. at 528 (2022)); *see also Curtis*, 61 Fed. Cl. at 514. A mistake is not "a mere later-regretted choice not infected by such an incorrect understanding." *DiMasi*, 2022 WL 20272146, at *3 (citing *In re Dinsmore*, 757 F.3d 1343, 1347–48 (Fed. Cir. 2014)). A claim of "excusable neglect" is evaluated by considering (1) the "danger of prejudice to the [nonmoving] party, [(2)] the length of the delay and its potential impact on judicial proceedings, [(3)] the reason for the delay, including whether it was within the reasonable control of the movant, and [(4)] whether the movant acted in good faith." *Guillot v. Sec'y of Health & Hum. Servs.,* No. 03-0775V, 2012 WL 3867160, *4 (Fed. Cl. Aug. 15, 2012) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Again, "[m]ere negligence or misrepresentation by a party's attorney does not qualify as excusable neglect under Rule 60(b)(1)." *Freeman v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 280, 283 (1996) (citing *Primbs v. United States*, 4 Cl. Ct. 366, 369 (1984), *aff'd*, 765 F.2d 159 (Fed. Cir.), *cert. denied*, 471 U.S. 1068, *reh'g denied*, 471 U.S. 1145 (1985)).

### B. RCFC 60(b)(6)

RCFC 60(b)(6) provides that a judgment may be reopened for "any other reason that justifies relief." RCFC 60(b)(6). This "catchall" provision may only be used to provide relief if

6

none of the other grounds set forth in the rule are applicable. *Kemp*, 596 U.S. at 533 (citing *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863 & n.11 (1988)). This provision has been characterized as a "grand reservoir of equitable power to do justice in a particular case." *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 714 F.3d 1289, 1295 (Fed. Cir. 2013) (quoting *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012)).

A movant is entitled to relief under RCFC 60(b)(6) if "such action is appropriate to accomplish justice" and only in "extraordinary circumstances." *CEATS, Inc. v. Cont'l Airlines, Inc.*, 755 F.3d 1356, 1361 (Fed. Cir. 2014) (internal quotation marks omitted). To obtain relief under this provision, a party must meet three requirements. First, as noted, the motion for relief cannot be predicated on another ground delineated in Rule 60(b). *See Liljeberg*, 486 U.S. at 863 & n.11. Second, the motion must be made within a "reasonable time." *In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 249 (9th Cir.1989) (internal quotation marks omitted). And third, the party requesting relief must demonstrate the existence of extraordinary circumstances that justify setting aside the judgment. *Bynoe v. Baca*, 966 F.3d 972, 979 (9th Cir. 2020).

The determination of whether extraordinary circumstances exist in a particular case lies within the discretion of the judge hearing the case. *Klapprott v. United States*, 335 U.S. 601, 615 (1949) (noting that paragraph (6) of Rule 60(b) gives the courts the power to "vacate judgments whenever such action is appropriate to accomplish justice"). RCFC 60(b)(6) does not relieve a party from a "free, calculated, and deliberate choice." *Kennedy*, 99 Fed. Cl. at 548 (quoting *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 6 (1st Cir. 2001)). The court "must find that a 'grave miscarriage of justice' would result if relief is denied." *Id.* at 540 (quoting *United States v. Beggerly*, 524 U.S. 38, 47 (1998)). In making its determination, the court must consider whether "'the need for truth outweighs the value of finality litigation.'" *Mora v. Sec'y of Health & Hum. Servs.*, No. 13-421V, 2015 WL 1275389, at *2 (Fed. Cl. Spec. Mstr. Feb. 27, 2015) (quoting *Curtis*, 61 Fed. Cl. at 512 (2004)), *mot. for rev. denied*, 122 Fed. Cl. 199 (2015), *aff'd* 673 Fed.Appx. 991 (Fed. Cir. 2016).

Courts generally have held that attorney negligence – even conceded "gross negligence" – does not merit relief under RCFC 60(b)(6). *G.G.M. (through Mora) v. Sec'y of Health & Hum. Servs.*, 122 Fed. Cl. 199, 204-09 (2015). This is because the attorney is acting as an agent for the client, who is charged with the acts and omissions of the agent. *Id.* at 205-09. Instead, to warrant relief, an attorney's discharge of her duties must be "so egregious" as to leave the unmistakable impression upon the court "that counsel had effectively abandoned and/or affirmatively misled [her client]." *Id.* at 205; *see also Lal v. California,* 610 F.3d 518, 524 (9th Cir. 2010) (granting relief from dismissal for failure to prosecute where attorney virtually abandoned client and misled him); *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164,1171-72 (9th Cir. 2002) (granting relief where, among other things, attorney ignored court orders, neglected motions, missed hearings and other court appearances, and failed to file pleadings or serve them on opposing counsel)); *Boughner v. Sec'y of Health, Ed. & Welfare*, 572 F.2d 976, 978 (3d. Cir. 1978) (same); *Coleman v. Sec'y of Health & Hum. Servs.*, No. 06-710V, 2011 WL 6828475, at *4 (Fed. Cl. Spec. Mstr. Dec. 7, 2011) (finding that "a failure to grant the motion would unduly and significantly impair petitioner's right to receive consideration of a meaningfully developed record based solely on her counsel's repeated failures to make timely filings.").

7

Furthermore, even where a petitioner has in fact been abandoned by his counsel, he must also show that he diligently pursued his rights before relief can be granted under Rule 60(b)(6). *See Gonzalez v. Crosby*, 545 U.S. 524, 537–38 (2005); *Foley v. Biter*, 793 F.3d 998, 1004 (9th Cir. 2015). A failure to appeal can be held against the moving party in the Rule 60(b)(6) analysis. *Medinol Ltd. v. Cordis Corp.*, 817 F. App'x 973, 979 (Fed. Cir. 2020); *M.D. by Dilascio v. Sec'y of Health & Hum. Servs.*, 153 Fed. Cl. 544, 563-64 (2021).

## IV. **ANALYSIS**

As a preliminary matter, Petitioner did not specifically tailor his arguments to any of the subsections of RCFC 60(b). Respondent has only addressed RCFC 60(b)(6). Petitioner cites to RCFC 60(b)(1) and 60(b)(6) in his Reply, and therefore I have liberally analyzed the issues raised by Petitioner under both RCFC 60(b)(1) and 60(b)(6).

### A. Relief From Judgment Is Not Available Under RCFC 60(b)(1)

As noted, a motion for relief under RCFC 60(b)(1) may only be granted where the petitioner has made a *prima facie* case for relief. If such a case has been made, the motion may be granted, among other things, for mistake or excusable neglect. In this case, I need not address whether Petitioner has made a *prima facie* case for relief, because even assuming he has, he failed to demonstrate that relief under RCFC 60(b)(1) is warranted.

Mr. Eloyan has made various allegations of excusable neglect or mistake against Ms. Muldowney and Special Master Oler. I address these allegations in turn.

#### 1. Purported Excusable Neglect by Counsel

The allegations concerning Ms. Muldowney seem to be best characterized as falling under the rubric of "excusable neglect." As discussed, "excusable neglect" generally does not include negligence, even gross negligence, or misrepresentation by a party's attorney. *Freeman*, 35 Fed. Cl. at 283. Moreover, Petitioner's allegations are not supported by the record and, even if they were proven, they likely would not have affected the outcome of the case.

Petitioner contends that Ms. Muldowney failed to adequately communicate with him and his mother. Motion at 3-4. In her final application for fees and costs, Ms. Muldowney provided billing records demonstrating her and her firm's outreach to Petitioner. *See generally* Ex. 64. Ms. Muldowney or her paralegal communicated with Petitioner about every two to three months. *See generally id.* In total, she spent 12 hours[7] communicating with her client; this does not include her paralegals' communication with Petitioner or her time spent preparing for such conversations. Further, while Petitioner complains that there was a communication breakdown either before or during the hearing, the records show that Ms. Muldowney's paralegal reached out to Petitioner on September 13 and 29, 2023, regarding his medical records and the upcoming hearing. Ex. 64 at

---

[7] *See* entries on 8/3/2017, 10/12/2018, 12/10/2018, 12/10/2019, 1/8/2020, 3/25/2020, 7/11/2020, 9/4/2020, 12/18/2020, 1/14/2021, 2/1/2021, 2/19/2021, 5/20/2021, 12/22/2021, 3/4/2022, 11/2/2023, 11/15/2023. Ex. 64.

8

16. Ms. Muldowney spoke with Petitioner on November 2, 2023, for 0.9 hours. *Id.* at 18. Directly after the November 15, 2023 entitlement hearing, Ms. Muldowney again spoke with Petitioner for 0.6 hours. *Id.* at 19. This shows Ms. Muldowney did not neglect or abandon her client by failing to communicate with him.

Petitioner argues that Ms. Muldowney provided deficient counsel because she never met Petitioner and his family in person, even when Petitioner offered to travel to meet her. Reply at 2. There is no requirement that an attorney meet with her client in person. In fact, counsel have been warned against incurring travel expenses for a short meeting with a client when a phone call or videoconference could have sufficed.[8] *See, e.g., Avchen v. Sec'y of Health & Hum. Servs.*, No. 14-279V, 2015 WL 9595415, at *4 (Fed. Cl. Spec. Mstr. Dec. 4, 2015) (reducing attorneys' fees and costs for lengthy travel to meet with a client for two hours; "[N]umerous cases in the Vaccine Program are successfully litigated without attorneys traveling to meet clients. This experience informs the undersigned that in-person meetings are not essential to the attorney-client relationship[.]"); *Hoffman v. Sec'y of Health & Hum. Servs.*, No. 19-111V, 2024 WL 4442045, at *3 (Fed. Cl. Spec. Mstr. Sep. 16, 2024) (finding travel to meet a client is not always required and might be an unreasonable expense).

Petitioner has several complaints about how Ms. Muldowney presented his case at the entitlement hearing. He argues that Ms. Muldowney should have let him and his parents testify. Motion at 5. He points out that there were inaccuracies in the expert reports and testimony that he and/or his family members could have corrected through testimony. *Id.* He notes that his own expert, Dr. Napoli, incorrectly described him as paraplegic. *Id.* at 4. Also, Dr. Zucconi identified various medical records that wrongly implied Petitioner had a history of substance abuse and diabetes. *Id.* at 6. Respondent's experts erroneously interpreted certain medical records relating to Petitioner's pre-vaccination balance, strength, and ability to walk. *Id.* at 6-10. Petitioner also claims that Dr. Kedl used his preexisting disability "against" him by explaining that people with disabilities are recommended to receive the flu vaccine. *Id.* at 9-10. Overall, he argues that Ms. Muldowney should have done more to counter this testimony. *Id.* at 10.

These claims fall squarely in the category of a dispute with counsel's litigation strategy. Moreover, even assuming Ms. Muldowney erred in making the decisions described or could have made better strategic calls, there is no evidence that any of the alleged errors by Ms. Muldowney affected Special Master Oler's decision to deny entitlement. The Dismissal Decision did not hinge on whether Petitioner had paraplegia or quadriplegia, whether his past medical history included substance abuse or diabetes, nor whether he experienced pre-vaccination symptoms. Instead, Special Master Oler rested her decision on Petitioner's failure to exclude a compressive cause of his symptoms and failure to prove his clinical nadir fell within the appropriate timeframe for TM.[9]

---

[8] Petitioner also states that he had no communication with Dr. Napoli and "thought [the] medical records speak [for] themselves." Motion at 4. There is no requirement in the Vaccine Program that an expert meet or communicate with the petitioner. To the contrary, in my experience, experts generally do not meet with petitioners and rely on the medical records, their medical expertise, and medical literature to formulate their opinions.

[9] Special Master Oler noted that some medical records suggested Petitioner experienced symptoms before his vaccinations. Dismissal Decision at 11. However, for purposes of determining the interval between

Additionally, because the critical issue was Petitioner's diagnosis, which turned on medical opinion, lay testimony would not likely have changed the outcome. *See Di Masi v. Sec'y of Health & Human Servs.*, No. 2022-1854, 2023 WL 4697122, *1 (Fed. Cir. 2023) (holding that the petitioner was not entitled to relief under Rule 60(b)(1) for her counsel's and the special master's alleged mistakes in relying on assertedly inaccurate post-vaccination records, because there had "been no adequate showing that correcting the asserted timing mistake about post-vaccination symptom manifestation could reasonably have altered the determination based on the pre-vaccination records.").

Next, Petitioner argues that Ms. Muldowney failed to advise him of the right to seek review of Special Master Oler's decision until after the 30-day deadline for review had passed. Reply at 1-2. This contention also is not supported by the record. At the conclusion of the entitlement hearing, which Petitioner attended, Special Master Oler issued an oral ruling dismissing the petition and specifically referenced the right to seek review and the limited timeframe for doing so. She stated: "I don't believe that your time [for] appeal will trigger until I issue my ruling in writing, although I would encourage you to look at the rules as the final arbiter on that point." Tr. at 175; *see* Motion at 3 (stating that Petitioner and his parents attended the hearing via Zoom). Also, as noted above, Ms. Muldowney's billing records, which are detailed and professional, indicate that she spoke with Petitioner for 0.6 hours immediately following the hearing; whether and when to appeal would have been natural subjects during that conversation. Ex. 64 at 19. And, about one month after the hearing, Petitioner executed a General Order No. 9 Statement certifying that he had incurred no costs during the litigation. Ex. 62. The billing records reflect that a paralegal drafted correspondence to Petitioner concerning that statement. Ex. 64 at 20. Thus, additional communication took place between Petitioner and Ms. Muldowney's firm, further undermining any claim of post-hearing abandonment. *See M.D. v. Sec'y of Health & Hum. Servs.*, No. 10-611V, 2020 WL 8025384, at *17 (Fed. Cl. Spec. Mstr. Dec. 17, 2020) (finding the attorney's communication with his client to obtain a General Order No. 9 Statement was some proof that the attorney did not abandon his client).

Overall, none of Petitioner's claims of alleged negligent conduct by Ms. Muldowney are sufficient to warrant relief under RCFC 60(b)(1), either individually or collectively. Special Master Oler warned Petitioner on November 10, 2021, that she did not believe Petitioner met the diagnostic criteria for TM, yet she still gave him a full and fair opportunity to be heard on his claim, including at an evidentiary hearing with supportive expert testimony. *See* Rule 5 Order, ECF No. 52. While I understand Mr. Eloyan's frustrations with some of his attorney's decisions, those did not affect the Dismissal Decision, and none of that conduct equated to mistake, inadvertence, surprise, or excusable neglect by Ms. Muldowney. Thus, Petitioner is not entitled to relief under RCFC 60(b)(1) based on Ms. Muldowney's conduct.

### 2. Purported Mistakes by Special Master Oler

Petitioner argues that Special Master Oler made mistakes in ruling that he did not have the diagnosis alleged, TM. *See* Motion at 11. He contends that she erroneously concluded that he had (1) failed to exclude a compressive etiology of his condition and (2) failed to prove that he reached

---

onset and nadir, she assumed that the onset of his symptoms was after the vaccinations, on January 25, 2016. *Id.*

the nadir of his condition within four hours and 21 days of onset, under the diagnostic criteria for TM. *Id.* at 11-16.

As noted, RCFC 60(b) does not provide an opportunity to relitigate the case, and a motion under this provision is not an "invitation for the court to investigate further whether to grant relief." *Id. Kennedy*, 99 Fed. Cl. at 550. Accordingly, I will not re-weigh the evidence. Instead, I discuss the bases of the Dismissal Decision to illustrate that Petitioner has failed to identify any mistake of law or fact affecting the outcome of the case.

In determining that Petitioner failed to exclude a compressive etiology, Special Master Oler focused on Petitioner's imaging studies and the experts' interpretations of them. Dismissal Decision at 7. She noted that Petitioner had his first cervical spine MRI on May 26, 2016, which showed a narrowing of the cervical spinal canal with superimposed moderate disc degeneration at the C3-C4 level.[10] *Id.* at *7. There was no fluid surrounding the spinal cord at that level, but there was edema extending above and below the level of compression. *Id.* The MRI also showed disc bulging and endplate spurring. *Id.* Dr. Napoli, a neurologist, opined that the edema above and below the compressed disc signified inflammation, but Dr. Zucconi, a board-certified radiologist with additional certification in neuroradiology, disagreed, testifying that the compression of the cord at that level was "sufficient to push the spinal fluid both above and below the C3-C4 level, because the fluid had no place else to go." *Id.* Dr. Zucconi testified that he saw this frequently in cases of spinal compression. *Id.* Respondent's neurology expert, Dr. Callaghan, agreed. *Id.* Dr. Zucconi further pointed out that CSM is the likely diagnosis when the anterior-posterior diameter of the spinal canal is less than 10mm, as was the case with Petitioner. *Id.* Overall, the initial MRI was diagnostic of spondylotic compressive myelopathy and spinal cord injury, not TM. *Id.*

Dr. Zucconi testified that Petitioner's second cervical spinal MRI, taken July 8, 2016, was essentially unchanged from the first MRI. Dismissal Decision at 10. This was typical for CSM. *Id.* His third cervical spine MRI, taken October 7, 2016, showed no changes in the compression of the spinal cord or stenosis, but the degree of enhancement had progressed, even though Petitioner had received a course of plasmapheresis and IV Solumedrol in July 2016. *Id.* In Dr. Zucconi's view, this indicated an ongoing injury consistent with cord compression. *Id.* Special Master Oler ultimately found Dr. Zucconi's testimony more persuasive than Dr. Napoli's, based in part on their comparative qualifications. *Id.* at 9.

Special Master Oler also noted that a multidisciplinary team at UCSF determined that Petitioner was suffering from cord compression, leading to a cervical laminectomy performed on January 8, 2018. Dismissal Decision at 10. Petitioner made gains thereafter, including regaining the ability to walk. *Id.* The fact that surgery helped alleviate his symptoms, but plasmapheresis and IV Solumedrol did not, was "further compelling evidence that TM is not the correct diagnosis." *Id.* She acknowledged the opinions of Petitioner's treating physicians, several of whom diagnosed

---

[10] Special Master Oler pasted a copy of the May 26, 2016 MRI image into her decision. Dismissal Decision at 9.

11

him with TM. *Id.* But she accorded greater weight to the multidisciplinary team at UCSF, "and the subsequent successful surgery." *Id.* at 11.

On the question of the interval from onset to nadir of Petitioner's symptoms, Special Master Oler pointed to medical records noting that the onset of his condition was in January 2016. Dismissal Decision at 11; Ex. 16 at 983-84. From January through April 2016, Petitioner had increasing falls and decreased grip strength, and he was having trouble walking up the stairs. *Id.* He then experienced "slowly progressive" weakness, eventually leading to "complete paralysis" of his arms and legs. *Id.* Crediting the opinion of Dr. Callaghan and citing medical literature, Special Master Oler found that the nadir of Petitioner's condition occurred around early September 2016, more than seven months after onset, which was "completely incompatible with TM." Dismissal Decision at 12. She also cited several Vaccine Program cases in which a TM diagnosis was rejected based on a lengthy progression of symptoms. *Id.*

Petitioner does not contest the accuracy of Special Master Oler's discussion of the record evidence on the issue of the etiology of his symptoms. Rather, he points to medical records documenting that he reported falls after the vaccinations, along with records from several treating physicians who suspected he had TM. Motion at 12-15. He also argues that his decompressive surgery did not actually improve his condition; instead, he attributes his early advances to a placebo effect from the surgery, stating that he had been led to expect major improvements in his condition with surgery. Motion at 15. He claims that his current condition "is the same as it was before the surgery." *Id.*

Likewise, with respect to the issue of nadir, Petitioner does not dispute the timeline of the progression of his symptoms as described by Special Master Oler. Instead, he argues that, according to criteria published by the National Institutes of Health, the time between onset and nadir is less important to diagnosis than findings on MRI, the presence of sensory, motor, or autonomic dysfunction, and the exclusion of a compressive lesion. Motion at 16.

It is indisputable that certain pieces of evidence in the record, as well as Dr. Napoli's testimony, supported Petitioner's contention that he suffered from TM. Nothing raised by Petitioner in the Motion, however, suggests that Special Master Oler's contrary conclusion resulted from a "factual misconception or misunderstanding" or an "error of law or fact." *See DiMasi*, 2022 WL 20272146, at *3. Instead, the gravamen of Petitioner's complaint is that he disagrees with how Special Master Oler weighed the evidence. Special Master Oler based her conclusions on multiple pieces of evidence, and she considered opposing expert opinions. In the end, she simply accorded greater credence to the evidence on Respondent's side, including persuasive opinions from a well-qualified defense expert. There is no claim that she erroneously interpreted the records or expert opinions. This was wholly within her purview as the trier of fact. *See Snyder ex rel. Snyder v. Sec'y of Health & Hum. Servs.*, 88 Fed. Cl. 706, 718 (2009) ("[S]pecial masters have great leeway in how they conduct proceedings, including what evidence to consider and how to weigh that evidence, and their credibility determinations and fact-intensive conclusions are

12

afforded great deference."). Ultimately, Special Master Oler's determination that Petitioner failed to meet two of the six TM diagnostic criteria has not been refuted by any of Petitioner's arguments.

Thus, I do not find that there was any mistake, inadvertence, surprise, or excusable neglect warranting relief from judgment under RCFC 60(b)(1).

### B. Relief From Judgment Is Not Available Under RCFC 60(b)(6)

For the reasons already articulated, I also conclude that Petitioner has failed to prove the existence of extraordinary circumstances warranting relief under RCFC 60(b)(6). Petitioner does not explicitly invoke "extraordinary circumstances" or "attorney abandonment" but has alleged misfeasance by his attorney, Ms. Muldowney. I conclude that he has failed to demonstrate Ms. Muldowney committed misfeasance equating to virtual abandonment, as required under this provision. On this question, I note that Petitioner's allegations here are distinct from the issue raised in *DiMasi*. There, the petitioner alleged that her attorney abandoned a significant aggravation claim without first obtaining her consent, and even though the special master specifically requested briefing on such a claim. *DiMasi*, 2023 WL 4697122, at *2. After the case was dismissed, counsel falsely advised the petitioner that the special master had effectively rejected a significant aggravation claim, even though one had never been asserted. *Id*. The Federal Circuit concluded that the case presented the rare circumstance "in which the client is not bound by a choice of counsel." *Id*. The judgment was ultimately vacated under RCFC 60(b)(6) for extraordinary circumstances, and the case was remanded to allow the petitioner to raise a significant aggravation claim. *Id*.

By contrast, Petitioner here was afforded the opportunity to prove up his TM diagnosis, even after Special Master Oler had a Rule 5 conference during which she carefully explained why she did *not* believe Petitioner had TM and instead had CSM. *See* ECF No. 52. His counsel pursued the TM claim through an entitlement hearing and presented expert testimony on the claim. Petitioner was put on notice of the right to seek review by Special Master Oler at the conclusion of the entitlement hearing. Petitioner, in fact, noted in the Motion that he and his parents "were on the muted zoom call as well. At the conclusion of the hearing Special Master Katherine E. Oler dismissed my petition," implying that he observed the entire proceeding and heard Special Master Oler's discussion regarding the timing for appeal. Motion at 3. Furthermore, as detailed above, Ms. Muldowney communicated with Petitioner directly after the hearing and likely discussed Special Master Oler's bench ruling and how to proceed. Thus, although it is unclear whether Ms. Muldowney specifically communicated to Petitioner the specific *deadline* to file a motion for review, even if she did not, that would not equate to attorney abandonment justifying relief from the judgment. Furthermore, as noted, Petitioner bore some personal responsibility to preserve his appellate rights. *See M.D. by Dilascio*, 153 Fed. Cl. at 562 (citing *Sneed v. McDonald*, 819 F.3d 1347, 1354 (Fed. Cir. 2016)).

Overall, there is nothing in the record indicating that extraordinary circumstances exist warranting relief from the judgment. Although I sympathize with Mr. Eloyan's ordeal and understand his frustration with the denial of his claim, I cannot grant relief from the judgment based on the record before me. Accordingly, in the exercise of my discretion, I conclude that the Motion must be denied.

## V. <u>CONCLUSION</u>

Upon careful evaluation of the parties' arguments and the standard of Vaccine Rule 36 and RCFC 60(b), **Petitioner's motion is hereby DENIED.**

**IT IS SO ORDERED.**

<u>s/ Jennifer A. Shah</u>
Jennifer A. Shah
Special Master