# In the United States Court of Federal Claims

No. 18-1450
Filed: September 11, 2025
Reissued: October 1, 2025†

---

VAHAN ELOYAN,

        *Petitioner*,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

        *Respondent.*

---

*Vahan Eloyan*, Elkins Park, PA, Pro Se Petitioner.

*Irene A. Firippis*, Trial Attorney, *Alexis B. Babcock*, Assistant Director, *Heather L. Pearlman*, Deputy Director, *C. Salvatore D'Alessio*, Director, Torts Branch, *Yaakov M. Roth*, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, D.C., for Respondent.

### MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

      Disappointment alone may warrant sympathy, but it cannot overturn a sound judgment. In this vaccine case, Vahan Eloyan ("Mr. Eloyan") previously moved to reconsider the dismissal of his petition, expressing deep dissatisfaction not only with the outcome of his case but also with the representation he received throughout litigation. He now moves for review of the Special Master's decision denying him relief, arguing that the circumstances call for reconsideration. (Mot. for Review ("Pet'r's Mot."), ECF No. 102). Although his disappointment is palpable and his concerns about counsel's performance are noted, Mr. Eloyan has not met the burden required to disturb the Special Master's decision. Accordingly, Mr. Eloyan's Motion for Review is **DENIED**.

---

† This Opinion was originally filed under seal on September 11, 2025. (ECF No. 111). The Court provided parties the opportunity to review this Opinion for any proprietary, confidential, or other protected information and submit proposed redactions. In a Joint Status Report filed September 23, (ECF No. 112), the parties indicated that no redactions were required.

#### I.    Background

On September 21, 2018, Mr. Eloyan sought relief from the National Vaccine Injury Compensation Program, alleging injury from the influenza ("flu") and tetanus, diphtheria, acellular pertussis ("Tdap") vaccines he received on December 14, 2015. (Petition ("Pet."), ECF No. 1); National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), Pub. L. No. 99-660, 100 Stat. 3755 (1986) (codified as amended at 42 U.S.C. §§ 300aa-1 to 34). Before receiving the flu and Tdap vaccinations, Mr. Eloyan had been diagnosed with cerebral palsy and diabetes but maintained an active, independent lifestyle. (Pet. at 2). Mr. Eloyan contends that after vaccination, he developed Transverse Myelitis ("TM"), an inflammatory disorder of the spinal cord, often characterized by "motor, sensory, and autonomic dysfunction." (*Id*. at 4; Resp't's Ex. E-3 (Transverse Myelitis Consortium Working Group, *Proposed diagnostic criteria and nosology of acute transverse myelitis*, 59 NEUROLOGY 499–505 (2002))).[1] Mr. Eloyan submits that his condition began with tingling and weakness throughout his extremities, back pain, and gross motor skill difficulties; eventually, his condition escalated to hand contracture, spastic quadriplegia, and a paralytic gait. (Pet. at 2–9; Pet'r's Mot. at 3, 7; Pet'r's Exs. 5, 6, 23, 24).

#### A.    Petition and Recommendation to Dismiss

Mr. Eloyan, initially represented by attorney Elizabeth Muldowney ("Ms. Muldowney"), supported his claim with several exhibits, including medical records and expert reports from a neurologist. (Pet'r's Exs. 1–19, 23–51). However, from the outset, the Secretary of Health and Human Services ("the Secretary") disputed Mr. Eloyan's TM diagnosis. (Resp't's Rule 4(c) Report at 17–18, 20, ECF No. 26). Specifically, the Secretary submitted that, due in part to Mr. Eloyan's history of cerebral palsy, it was more likely that his myelopathy was due to trauma—an acute spinal cord injury—rather than inflammation associated with TM. (*Id.* at 17 ("Myelopathy refers to a clinical syndrome that can be caused by many pathologies. When the myelopathy is due to trauma, it is known as an acute spinal cord injury. When the cause is inflammatory, it is known as myelitis. The most common diagnosis petitioner received was myelopathy of unknown etiology[.]")). The Secretary supported its position with expert reports from a neurologist, immunologist, and neuroradiologist. (Resp't's Exs. A, C, E).

Following a Rule 5 conference, Special Master Oler advised the parties that she found the Secretary's experts persuasive and tentatively concluded that Mr. Eloyan likely had cervical

---

[1] For his underlying claim, Mr. Eloyan's supporting exhibits are located on the docket at ECF Nos. 5 (Exs. 1–10), 6 (Exs. 11–19), 20 (Exs. 23–28), 33 (Exs. 29–38), 34 (Exs. 39–43), 37 (Exs. 44–47), 38 (Exs. 48–50 (exhibits filed on compact disc)), and 49 (Ex. 51). Likewise, the Secretary of Health and Human Services' exhibits are located at ECF Nos. 43 (Exs. A–D), 45 (Exs. A1–A3), 46 (Ex. E), 64 (Exs. C1–C19), 55 (Ex. F), and 66 (Exs. E1–E10). For clarity and readability, the Court will refer to relevant exhibit numbers or titles rather than citing docket entries throughout this Opinion, ("Pet'r's Ex.\_," "Resp't's Ex. \_").

spondylotic myelopathy ("CSM"), not TM.[2] (Rule 5 Order, ECF No. 52). Finding no viable path forward, Special Master Oler advised Mr. Eloyan to withdraw his case. (*Id.*). Despite her recommendation, Mr. Eloyan requested an entitlement hearing, which was held almost two years later on November 15, 2023. (ECF No. 57).

        B.      *Entitlement Decision*

At the entitlement hearing's conclusion, Special Master Oler ruled that Mr. Eloyan was not entitled to compensation, finding that "preponderant evidence supports the diagnosis of [CSM], and the record does not support a diagnosis of [TM]." (Entitlement Hr'g Tr., Oler, 175:2–6, ECF No. 78). In the written decision, Special Master Oler expounded on her oral findings. *See Eloyan v. Sec'y of Health & Hum. Servs.*, No. 18-1450V, 2023 WL 9053983 at *1 (Fed. Cl. Spec. Mstr. Nov. 17, 2023), ("*Eloyan* Dismissal Decision")). There, she noted that because Mr. Eloyan alleged an off-table injury, he would need to "prove by preponderant evidence that he suffered an injury and that this injury was caused by the vaccination at issue." *Eloyan* Dismissal Decision at *6 (citing *Capizzano*, *v. Sec'y of Health & Hum. Servs.*, 440 F.3d 1317, 1320 (Fed. Cir. 2006)); *see also de Bazan v. Sec'y of Health & Hum. Servs*., 539 F.3d 1347, 1351 (Fed. Cir. 2008) (holding that a petitioner in off-table injury cases "is not afforded a presumption of causation and thus must prove causation-in-fact.").

Devoid of medical jargon, Special Master Oler ultimately concluded that Mr. Eloyan's TM diagnosis was incorrect and that his actual ailment, CSM, was something he would have suffered from regardless of the vaccines. *See Eloyan* Dismissal Decision. Upon reviewing the diagnostic criteria for acute transverse myelitis, Special Master Oler found that Mr. Eloyan failed to satisfy three requisite factors, thereby rendering him ineligible for entitlement. *Id.* at *6–9. First, Special Master Oler concluded that Mr. Eloyan had not ruled out myelopathy—a compressive etiology—relying on findings from a multi-disciplinary team at the University of California, San Francisco, which determined that Mr. Eloyan was experiencing spinal cord compression rather than TM despite earlier diagnoses. *Id.* at *7 (citing Pet'r's Ex. 16 at 6). Next, Special Master Oler found that Mr. Eloyan did not establish that his condition reached its nadir within twenty-one days of vaccination, the required time frame for a TM diagnosis.[3] *Id.* at *8–9. Finally, Special Master Oler held that Mr. Eloyan did not demonstrate that the presence of three oligoclonal bands in his cerebrospinal fluid was diagnostic of TM.[4] *Id.* at *9.

---

[2] A "Rule 5 Conference" refers to a preliminary status conference where the special master affords the parties an opportunity to address each other's positions, reviews submissions, and presents tentative findings and conclusions. RCFC App'x B ("Vaccine Rules") 5(a)(1)–(3).

[3] Nadir is defined as "the lowest point." *Nadir*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/nadir (last visited September 3, 2025). For Mr. Eloyan's condition, "nadir means the time to [his] worst point." (Entitlement Hr'g Tr., Callaghan, 73:23–24).

[4] "Oligoclonal bands [are] a marker of neuroinflammation or active inflammation happening in the spinal cord." (Entitlement Hr'g Tr., Napoli, 18:9–11).

Importantly, Mr. Eloyan did not seek review of the dismissal. Judgment was entered on December 21, 2023, the same day Mr. Eloyan elected to file a civil action.[5] (ECF Nos. 79, 80). On July 9, 2024, Ms. Muldowney moved to withdraw from this case at Mr. Eloyan's request. (Mot. to Withdraw, ECF No. 89). At this point, Mr. Eloyan's post-dismissal filings began. (Pet'r's 60(b) Mot., ECF No. 100).

### C.    Denial of Post-Dismissal Relief

Mr. Eloyan sought relief from dismissal, and the case was reassigned to Special Master Jennifer Shah.[6] (Pet'r's 60(b) Mot.; *see* ECF No. 95). In support of his Motion for Relief from Judgment, Mr. Eloyan challenged the adequacy of his legal representation, as well as the factual and legal conclusions reached in his case. (*See* Pet'r's 60(b) Mot.). More specifically, Mr. Eloyan alleged that throughout representation, Ms. Muldowney had minimal communication with him and his designated point of contact, failed to grasp key aspects of his medical condition, and advised against testimony that he believed could have altered the outcome of Special Master Oler's decision. (*Id.* at 3–4). Mr. Eloyan further claimed that his expert was ill-informed— evidenced by repeated mischaracterizations of his condition—and unable to support his opinion effectively. (*Id.* at 4). Mr. Eloyan also took issue with the veracity of the Secretary's expert reports, particularly claims regarding a history of substance abuse, and the interpretation of pre-vaccination records. (*Id.* at 11). Finally, Mr. Eloyan contested Special Master Oler's determination that he failed to meet the diagnostic criteria for TM, arguing that a compressive etiology was reasonably excluded and that the timing of symptom progression was less significant than other diagnostic factors. (*Id.* at 12–17).

As discussed in more detail below, Special Master Shah determined that Mr. Eloyan did not meet the burden required to obtain relief pursuant to RCFC 60(b). *See Eloyan v. Sec'y of Health & Hum. Servs.*, No. 18-1450V, 2025 WL 1291260 (Fed. Cl. Mar. 25, 2025) ("*Eloyan* 60(b) Decision"). Special Master Shah analyzed Mr. Eloyan's motion under RCFC 60(b)(1) and 60(b)(6). *Id.* at *1. Regarding Ms. Muldowney's purported neglect, she found that Mr. Eloyan's criticisms were "not supported by the record and, even if they were proven, they likely would not have affected the outcome of the case." *Id.* at *6. As to the purported mistakes made by Special Master Oler, Special Master Shah held that Mr. Eloyan's motion was based on how the evidence was weighed rather than a factual misunderstanding or an error of law or fact. *Id.* at *9 (internal citations omitted). Finally, Special Master Shah found that Mr. Eloyan "failed to demonstrate Ms. Muldowney committed misfeasance equating to virtual abandonment" that may warrant relief under RCFC 60(b)(6). *Id.* at 10. After that decision, Mr. Eloyan filed a Motion for Review, (Pet'r's Mot.).

---

[5] An election to file a civil action rejects the Vaccine Program's judgment and, if timely filed, preserves whatever rights the petitioner may have to file a civil action in another court. Vaccine Rule 12.

[6] After Special Master Oler's nomination and confirmation to the Superior Court of the District of Columbia, Special Master Shah was appointed to oversee this case. District of Columbia Courts, *Oler, Katherine E.*, https://www.dccourts.gov/node/26523 (last visited Sept. 8, 2025).

## II.    Analysis

Mr. Eloyan's case is procedurally remarkable in two respects: his status as a pro se litigant and the limited scope of the Court's review. The Court acknowledges that while Mr. Eloyan was represented by Ms. Muldowney in his underlying action, he now represents himself. (Mot. to Withdraw; Order Granting Withdrawal, ECF No. 90). Accordingly, a degree of latitude is warranted in interpreting his arguments. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding that a court reads pro se pleadings more liberally than those prepared by a lawyer.) Further, at this stage, the Court's level of review is from a bird's-eye view. As stated, Mr. Eloyan did not seek review of Special Master Oler's dismissal. *Eloyan* 60(b) Decision at *2 ("Petitioner did not file a motion for review of the Dismissal Decision."). The only question properly before the Court now is whether Mr. Eloyan was entitled to post-dismissal relief. Stated differently, the Court's function is not to revisit Special Master Oler's dismissal, but to assess whether Special Master Shah's denial of relief—under a more demanding standard—was unreasonable.

Mr. Eloyan's request is aimed at reconsidering the merits of the original dismissal, rather than seeking relief from judgment. His conclusory assertions that the prior decision was incorrect provide no meaningful basis for judicial review. Due to the degree of leniency afforded to pro se litigants, the Court attempts to construe Mr. Eloyan's arguments as directed toward Special Master Shah's findings and conclusions. Even so, the Court finds that Special Master Shah's analysis was sound.

### A.    Motion for Review

Under the Vaccine Act, the Court of Federal Claims reviews a decision of the Special Master upon the timely request of either party. *See* 42 U.S.C. § 300aa-12(e)(1)–(2) (2018). The Court reviews such a decision to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 42 U.S.C. § 300aa-12(e)(2)(B); *see also Patton v. Sec'y of Dep't of Health & Hum. Servs.,* 25 F.3d 1021, 1029 (Fed. Cir. 1994) (holding that RCFC 60(b) rulings should be reviewed on an abuse of discretion basis). Specifically, the Court applies the arbitrary and capricious standard to factual findings and reviews all legal conclusions de novo. *Munn v. Sec'y of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). Importantly, "the standard of review for a mixed question [of law and fact] all depends [ ] on whether answering it entails primarily legal or factual work." *Echols v. Sec'y of Health & Hum. Servs.,* 165 Fed. Cl. 9, 16 (2023) (alteration in original) (quoting *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC,* 583 U.S. 387, 396 (2018)).

On review, the Court's role is not to "reweigh the factual evidence" or "assess whether the special master correctly evaluated the evidence." *Lampe v. Sec'y of Health & Hum. Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000) (quoting *Munn*, 970 F.2d at 871). Neither does the Court "examine the probative value of the evidence or the credibility of the witnesses." *Id.* The "arbitrary and capricious [standard] is a highly deferential standard of review. If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines ex rel. Sevier v. Sec'y of Dep't of Health & Hum. Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991) (holding that "reversible error [is] extremely difficult to demonstrate") (cleaned up); *see Cucuras v. Sec'y of Dep't of Health & Hum. Servs.*, 26 Cl. Ct. 537, 541 (1992), *aff'd*, 993 F.2d

1525 (Fed. Cir. 1993). Critically, the Court cannot "substitute its judgment for that of the special master merely because it might have reached a different conclusion." *Snyder v. Sec'y of Dep't of Health & Hum. Servs.*, 88 Fed. Cl. 706, 718 (2009).

        B.        *RCFC 60(b) Standard*

        RCFC 60 mirrors Rule 60 of the Federal Rules of Civil Procedure ("FRCP"), and the Court applies the same evaluative standards. *See Dobyns v. United States*, 915 F.3d 733, 737 n.1 (Fed. Cir. 2019) (citing *Info. Sys. & Networks Corp. v. United States*, 994 F.2d 792, 794–97, 794 n.3 (Fed. Cir. 1993)). RCFC 60(b) is a remedial provision that should be liberally construed in the interest of effecting substantial justice. *Patton*, 25 F.3d at 1030 (citations omitted). RCFC 60(b) provides that a party may seek relief from a final judgment, order, or proceeding based on any of six enumerated factors. At its core, the rule "allows a party to seek relief from final judgment and reopen a case based on mistake or excusable neglect, newly discovered evidence, fraud, the void or prospectively inequitable status of a judgment[,]" or any other reason that justifies relief. *See BLOM Bank Sal v. Honickman*, 145 S. Ct. 1612, 1618 (2025) (citing FRCP counterpart to RCFC 60(b)(1)–(5)); RCFC 60(b)(6).

        "The court has discretion regarding whether to grant relief under [RCFC] 60(b), 'and the court may weigh equitable considerations in the exercise of its discretion.'" *Curtis v. United States*, 61 Fed. Cl. 511, 512 (2004) (quoting *Dynacs Eng'g Co. v. United States*, 48 Fed. Cl. 240, 241–42 (2000)). It is incumbent upon the party invoking RCFC 60(b) to substantiate its claim to relief. *See Kennedy v. Sec'y of Health & Hum. Servs.*, 99 Fed. Cl. 535, 550 (2011). A motion under RCFC 60(b) is not treated as a pleading—such as a complaint—where factual allegations are assumed to be true. *Id.* (citing RCFC 7(b); *Girard Trust Bank v. Martin*, 557 F.2d 386, 389 (3d Cir.), *cert. denied*, 434 U.S. 985 (1977)). The filing of a Rule 60(b) motion does not, in itself, warrant renewed judicial examination into the merits of potential relief. *Id.*

        Given the broad discretion vested in the trial court under Rule 60(b), review is confined to determining whether that discretion was abused. *Sioux Tribe of Indians v. United States*, 862 F.2d 275, 279 (Fed. Cir. 1988) (quoting *United States v. Atkinson*, 748 F.2d 659, 660 (Fed. Cir. 1984)). "An abuse of discretion exists 'when the trial court's decision is clearly unreasonable, arbitrary or fanciful, or is based on clearly erroneous findings of fact or erroneous conclusions of law.'" *Lazare Kaplan Int'l Inc. v. Photoscribe Techs., Inc.*, 714 F.3d 1289, 1295 (Fed. Cir. 2013) (quoting *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1382 (Fed. Cir. 2002)). In this case, Special Master Shah analyzed Mr. Eloyan's motion under the light of RCFC 60(b)(1)—mistake, inadvertence, surprise, or excusable neglect—and the microscope of RCFC 60(b)(6)—extraordinary circumstances. *Eloyan* 60(b) Decision at *6–11; *see also Info. Sys. & Networks Corp.*, 994 F.2d at 795 ("While subsection (6) requires a showing of 'extraordinary circumstances,' subsections (1) and (6) of Rule 60(b) 'are mutually exclusive,' and the required showing of extraordinary circumstances under subsection (6) does not apply to . . . subsection

(1)." (citations omitted)). On review, Mr. Eloyan challenges the findings specific to Rule 60(b)(1).[7]

> ### C.  Mr. Eloyan was not entitled to relief under RCFC 60(b)(1).

Under RCFC 60(b)(1), Special Master Shah analyzed Ms. Muldowney's purported "excusable neglect" and Special Master Oler's reliance on mistaken facts. *Eloyan* 60(b) Decision at *6–9. In his Motion for Review, Mr. Eloyan largely revives those allegations. Mr. Eloyan asserts that Ms. Muldowney was generally uncommunicative, failed to substantiate the extent of his impairment, and permitted an inaccurate perception of improvement that was not supported by his actual condition. (Pet'r's Mot. at 3–4). As to Special Master Oler's purported mistakes, Mr. Eloyan suggests that she incorrectly assessed when he reached the lowest point of his condition and weighed false improvements against him when he saw no improvement. (*Id.* at 5–7). The Secretary asserts that Special Master Shah's findings and conclusions were not an abuse of discretion. (Resp't's Resp. at 6–11, ECF No. 106). The Court defers to Special Master Shah's determination that Mr. Eloyan's arguments lacked merit and finds her reasoning to be both thorough and sound.

Rule 60(b)(1) allows the Court to grant relief from a final judgment, order, or proceeding based on mistake, inadvertence, surprise, or excusable neglect. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 25 Fed. App'x 923, 924 (Fed. Cir. 2001) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). Mistakes refer to a "factual misconception or misunderstanding" or an "error of law or fact," whether by a party or by the court. *Kemp v. United States,* 596 U.S. 528, 534–35 (2022) (cleaned up). "It is implicit in the definition that invocation of this provision is not available for a mere later-regretted choice not infected by such an incorrect understanding." *DiMasi v. Sec'y of Health & Hum. Servs.*, No. 2022-1854, 2022 WL 20272146, at *3 (Fed. Cir. Dec. 19, 2022) (citing *In re Dinsmore*, 757 F.3d

---

[7] Special Master Shah analyzed Mr. Eloyan's Motion for Relief from judgment under RCFC 60(b)(6), not because he invoked it, but because he "alleged misfeasance by his attorney." *Eloyan* 60(b) Decision at *10. Rule 60(b)(6) is a catch-all provision providing that the court may relieve a party from a final judgment for "any other reason that justifies relief." *See Odyssey Logistics & Tech. Corp. v. Stewart*, 130 F.4th 973, 978 (Fed. Cir. 2025). The Supreme Court has held that Rule 60(b)(6) movants fight an uphill battle and are required "to show *extraordinary* circumstances justifying the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (emphasis added) (internal citations and quotations omitted). Rule 60(b)(6) motions "must be supported by a showing of extraordinary circumstances which justify relief." *Caldwell v. United States*, 391 F.3d 1226, 1228 (Fed. Cir. 2004) (quotation marks omitted). Mr. Eloyan cites only RCFC 60(b)(1) in his Motion for Review. (Pet'r's Mot. at 7 (citing 60(b)(1) twice under "Applicable Legal Standards")). The decision not to invoke Rule 60(b)(6) seems to reflect a considered choice rather than oversight. Nevertheless, because the Court does not find Ms. Muldowney's conduct to constitute excusable neglect, it necessarily falls short of the type of extraordinary or egregious circumstances required to justify relief under RCFC 60(b)(6). *See M.D. by Dilascio v. Sec'y of Health & Hum. Servs.*, 153 Fed. Cl. 544, 562 (2021) (discussing attorney abandonment) (citing *Sneed v. McDonald,* 819 F.3d 1347 (Fed. Cir. 2016)).

1343, 1347–48 (Fed. Cir. 2014)). In considering a motion for relief from judgment under 60(b)(1) for reasons of "excusable neglect," a court should balance three factors: "(1) whether the movant has a meritorious claim or defense; (2) whether the nonmovant would be prejudiced by the granting of relief; and (3) whether the matter sought to be relieved was caused by the movant's own culpable conduct." *Orient Overseas Container Line (UK) Ltd. v. United States*, 52 Fed. Cl. 805, 807 (2002) (citing *Info. Sys. & Networks Corp.*, 994 F.2d at 795).

As to Ms. Muldowney's level of communication with her client, Special Master Shah found that Mr. Eloyan's allegations were unsupported by the record and unlikely to have affected the outcome of his case. *Eloyan* 60(b) Decision at *6. She relied on Ms. Muldowney's billing records showing periodic contact between counsel and Mr. Eloyan or his representative, concluding that Ms. Muldowney did not neglect or abandon her client. *Id.* Special Master Shah further determined that the absence of in-person meetings did not constitute neglect, given the potential for unreasonable expense. *Id.* at 7. Without disputing Special Master Shah's reasoning, Mr. Eloyan repeats the same arguments raised before her. (Pet'r's Mot. at 3–4). In the absence of any challenge to Special Master Shah's findings on these issues, her conclusions, which were based on billing records and relevant case law, do not reflect an abuse of discretion.

As to how Ms. Muldowney presented Mr. Eloyan's case at the entitlement hearing, Special Master Shah found that Mr. Eloyan's grievances fell "squarely in the category of a dispute with counsel's litigation strategy," and did not qualify for relief from judgment. *Eloyan* 60(b) Decision at *7–8. She further concluded that no evidence of the alleged missteps by Ms. Muldowney (i.e., witness presentation, expert rebuttal, or Ms. Muldowney's understanding of Mr. Eloyan's condition) would have altered the former special master's entitlement determination. *Id.* at *8. The Court agrees with Special Master Shah's characterization that the decision to deny entitlement was based on Mr. Eloyan's "failure to exclude a compressive cause of his symptoms and failure to prove that his clinical nadir fell within the appropriate timeframe for TM." *Id.* These findings support the conclusion that Special Master Shah acted within the scope of her discretion.

Even assuming arguendo that Ms. Muldowney's conduct amounted to negligence or misrepresentation, the Secretary supports that Special Master Shah properly concluded that such conduct "does not qualify as excusable neglect under Rule 60(b)(1)." (Resp't's Resp. at 8); *Eloyan* 60(b) Decision at *6; *Freeman*, 35 Fed. Cl. at 283. In cases where a litigant disagrees with counsel's litigation strategy, such disagreement does not justify relief from judgment; attorney conduct must rise to the level of "gross neglect" or "egregious misconduct" to warrant relief. *See Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."); *Sneed v. McDonald,* 819 F.3d 1347, 1351 (Fed. Cir. 2016) ("[T]he client is normally responsible for the malfeasance of the attorney[.]"). Given the elevated threshold applicable to claims of attorney misconduct, Special Master Shah's findings regarding Ms. Muldowney's representation fall well within the bounds of reasoned discretion.

As to Mr. Eloyan's arguments related to Special Master Oler's "mistakes," his Motion states that his 60(b) Motion was not intended "to suggest that Special Master Oler misapplied the law in concluding [he] did not meet the medical etiology threshold." (Pet'r's Mot. at 5). Mr.

Eloyan's argument instead rests on his claim that Special Master Oler misjudged the timing of his clinical nadir and mistakenly relied on signs of improvement that, he maintains, were absent. (*Id.* at 5–6). Such contentions improperly seek to relitigate the evidentiary weight afforded by Special Master Oler, rather than identifying a legal or factual error. Viewed in context with the rest of the record, this argument leaves little room for the Court to reconsider the prior determinations. To the extent Mr. Eloyan challenges Special Master Oler's reliance on alleged "improvements," the record does not support the claim that either Special Master Oler or Shah substantially credited a "miraculous recovery," as Mr. Eloyan suggests. (*Id.* at 4). During the entitlement hearing, the United States' experts confirmed that even though "improvement of some degree is almost universal[,]" this was not so in Mr. Eloyan's case. (Entitlement Hr'g, Callaghan, 96:15, 18–21 ("What's shocking in this case, you know, or at least very clear that it's not transverse myelitis is that there's no improvement really outside of, you know, maybe supertransiently after steroids.")). Mr. Eloyan equates "improvements" with "recovery," overlooking the meaningful distinction between the two.

The fatal issue with Mr. Eloyan's Motion is that reweighing the evidence falls outside the scope of this Court's review, just as it did for Special Master Shah. *See Snyder*, 88 Fed. Cl. at 718 ("[S]pecial masters have great leeway in how they conduct proceedings, including what evidence to consider and how to weigh that evidence, and their credibility determinations and fact-intensive conclusions are afforded great deference."). Special Master Shah iterated that while it is "indisputable that certain pieces of evidence in the record," including Mr. Eloyan's expert testimony, supported a TM diagnosis, Mr. Eloyan failed to establish that Special Master Oler's contrary finding was a result of "factual misconception or misunderstanding" or an "error of law or fact." *Eloyan* 60(b) Decision at *8 (citing *DiMasi*, 2022 WL 20272146, at *3). Special Master Shah's analysis reflects that Special Master Oler's decision rested on a comprehensive review of the medical record and a balanced consideration of competing expert opinions. *Id.* (noting the divergent interpretations of Mr. Eloyan's cervical MRIs dated May 26 and July 8, 2016, and crediting the Secretary's expert as more persuasive); *id.* (evaluating the assessments of Mr. Eloyan's treating providers and assigning greater weight to the multidisciplinary team at UCSF, which concluded petitioner's condition was attributable to cord compression rather than TM). By adhering to the standard set forth in RCFC 60(b)(1) and relying on the record, Special Master Shah's conclusions fall within the bounds of reasoned decision-making.

Special Master Shah determined that Mr. Eloyan did not satisfy the criteria under RCFC 60(b)(1), as he failed to demonstrate mistake, inadvertence, surprise, or excusable neglect, and likewise did not point to a clear error of fact or law or submit newly clarified evidence that would justify disturbing the final judgment. *Eloyan* 60(b) Decision at *6–10. Reconsideration is not a vehicle for reasserting arguments the court has already addressed, nor is it intended to provide a dissatisfied party with an opportunity to relitigate the case. *See Nyan v. United States*, 154 Fed. Cl. 463, 464 (2021). Mr. Eloyan has not shown, and the record does not support a finding, that Special Master Shah's decision rejecting reconsideration was an abuse of discretion. *See Avera v. Secretary of Health & Human Services*, 515 F.3d 1343, 1347 (Fed. Cir. 2008).

### III.   Conclusion

In short, Mr. Eloyan's claim was dismissed because Special Master Oler found that he did not allege an injury that could be caused by a vaccine. *Eloyan* Dismissal Decision at *6. Special Master Shah found that Mr. Eloyan did not show entitlement to relief from that judgment. *Eloyan* 60(b) Decision at *11. On review, the Court finds that Mr. Eloyan has shown no reason to disturb those findings. For the stated reasons, the Court hereby **DENIES** Mr. Eloyan's Motion for Review, (ECF No. 102), and **AFFIRMS** the Special Master's Order Denying Relief from Judgment, (ECF No. 100). The Clerk is directed to enter judgment accordingly.

The Court has filed this Opinion under seal. The parties shall confer to determine proposed redactions to which all parties agree. Per Vaccine Rule 18(b), fourteen (14) days from the date of this decision, the parties shall file a Joint Status Report indicating their agreement with the proposed redactions, attaching a copy of those pages of the Court's ruling containing proposed redactions, with all proposed redactions clearly indicated.

**IT IS SO ORDERED.**



s/      David A. Tapp
DAVID A. TAPP, Judge